# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

vs.

SCOTT ALLAN BENNETT

**CRIMINAL COMPLAINT**

8.10 MJ157 3 MAP

CASE NUMBER: 8:10-MJ-

I, the undersigned complainant, being duly sworn, state the following is true and correct

to the best of my knowledge and belief. Beginning on or about January 19, 2010, and

continuing through on or about April 23, 2010, in Hillsborough County, in the Middle District of

Florida, defendant(s) did,

> Make a False Statement on a Matter within the Jurisdiction of the Executive
> Branch of the Government of the United States; and Violate a Defense Property
> Security Regulation

in violation of Title 18, United States Code, Section 1001, and Title 50, United States Code,

Section 797. I further state that I am a Detective with the Department of the Air Force Police,

6th Security Forces Squadron, at MacDill Air Force Base, and that this Complaint is based on

the following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant
Edward R. Garcia, Jr., Detective
6th Security Forces Squadron, Dept.
of the U.S. Air Force Police

Sworn to before me and subscribed in my presence,

December 16, 2010                    at

MARK A. PIZZO
United States Magistrate Judge
Name & Title of Judicial Officer

Tampa, Florida

Signature of Judicial Officer

## BOND RECOMMENDATION: Bond

SCS/vca

## AFFIDAVIT

I, Edward R. Garcia, Jr., being duly sworn, do depose and state:

1.        I am a Supervisory Detective with the Department of the Air Force Police, 6th Security Forces Squadron, at MacDill Air Force Base and have been so employed since July 12, 2004. As a Detective, my duties include, but are not limited to, conducting criminal investigations into allegations and complaints of violations of the law within MacDill Air Force Base. I am a federal law enforcement officer as defined in 28 C.F.R., Part 60, and am authorized to seek arrest and search warrants and to swear to affidavits in front of federal judges. I have learned the following information in my official capacity by first-hand observations, interviews, my review of documents and records related to this investigation, my communications with other law enforcement officers who have personal knowledge of the events and circumstances described herein, information gained through my training and experience, and information developed or imparted to me in the performance of my official duties as a law enforcement officer. The information contained in this affidavit is provided solely for the purpose of establishing probable cause to obtain an arrest warrant and is not all-inclusive of the facts in this investigation.

2.        This affidavit is made in support of a criminal complaint for SCOTT ALLAN BENNETT for violations of Title 18, United States Code, Section 1001 - Making a False Statement on a Matter within the Jurisdiction of the Executive Branch of the Government of the United States and Title 50, United States Code, Section 797 - Violating a Defense Property Security Regulation. Based upon my training, knowledge,

experience and conversations with other special agents and other law enforcement officers, I know the following:

3.      In the early morning hours of April 23, 2010, Scott Allan Bennett was selected for random screening as he was entering the Dale Mabry gate at MacDill Air Force Base. Bennett consented to the screening. An officer then conducted an inspection of Bennet's car, during which he discovered two knives and an empty gun holster. The officer asked Bennett if there were additional weapons in the car, and Bennett said there were not.

4.      Officers at the gate noticed that Bennett appeared dazed and confused during the inspection. They therefore called in the Tampa Police for a suspected DUI. A Tampa Police Department officer arrived approximately 30 minutes later and administered a field sobriety test to Bennett, after which Bennett was arrested for driving under the influence. He was searched subject to arrest, and a concealed, loaded handgun was discovered on his person. Tampa police also searched Bennett's vehicle and discovered another loaded handgun, three additional knives, a box of throwing stars, a machete, a collapsible baton, a sling shot with BBs, and mace.

5.      After he was released by Tampa police, Bennett returned to the Dale Mabry gate at MacDill Air Force Base at approximately 1:45 p.m. on April 23, 2010. Your affiant read Bennett his rights at this time, and Bennett invoked his right to remain silent and requested counsel. You affiant sought Bennett's permission to search his home, which was located on MacDill Air Force Base, but Bennett denied permission. Your affiant therefore sought and was subsequently granted a search warrant from a military magistrate judge. The search began at approximately 6 p.m. During the

-2-

search, the following items were found in Bennett's residence on MacDill Air Force Base: seven loaded firearms; approximately 9,389 additional rounds of ammunition; numerous knives; brass knuckles; an electric stun gun; and a collapsible baton, in addition to other weapons and prohibited materials.

6.      Under MacDill Air Force Base Instruction 31-101, the Installation Security Instruction, approved by the Base Commander on January 11, 2010, Bennett was required to register any firearms and ammunition that he intended to keep in his on-base residence with the Base Armory prior to having the items in his residence and was not allowed to carry concealed weapons on MacDill Air Force Base. The prohibition on carrying concealed weapons was posted at the Dale Mabry Gate, as required by 50 U.S.C. § 797(b). Additionally, Bennett received a copy of the Base Housing Resident Handbook, which explained the requirement that all weapons and ammunition be registered with the Base Armory before they are present in on-base housing. Your affiant inquired of the Base Armory, and Bennett had not reported any of his firearms, ammunition, or other weapons to that facility.

7.      During the course of this investigation, your affiant confirmed that Bennett had obtained housing on MacDill Air Force Base by subterfuge. On-base housing at MacDill Air Force base is managed by a private company, AMC East Communities, LLC, as part of a long-term lease with the U.S. government. The U.S. government, specifically the Department of the Air Force, however, retains the rights to set the rules and regulations for on-base housing, as well as the right to decide who can live in housing on MacDill Air Force Base. A government employee oversees and approves each application submitted for on-base living quarters. Currently, in order to live on

Base, one must be at least a member of the Reserve forces on active duty orders and one's military duty station must be within 25 miles of MacDill Air Force Base.

8.      According to officials with the U.S. Army Reserves. Bennett is a member of the Army Reserves.  Bennett's military commander, however, has confirmed that Bennett has not been on active duty orders at any time relevant to this complaint and has only been on active duty orders one time during his membership in the Army Reserves to attend a week-long training session.  Bennett served as a civilian military contractor on MacDill Air Force Base employed by Booz Allen Hamilton during some time periods relevant to this complaint.  Bennett's supervisor at Booz Allen confirmed that Bennett was not on any type of active duty orders related to his employment at Booz Allen and was operating strictly as a civilian.  Thus, Bennett was not entitled to on-base housing because he was neither active duty nor stationed within 25 miles of MacDill Air Force Base.

9.      Despite the fact that he was not serving on active duty military orders, Bennett repeatedly held himself out to officials in the Housing Office on MacDill Air Force Base as being on active duty military orders.  Bennett's first contact with the Base Housing Office was in mid-January 2010.  In one conversation from this time, an employee of AMC East Communities, LLC, told him by phone that only active duty service members were entitled to on-base housing.  Bennett told this employee he was an active duty reservist coming to work at MacDill Air Force Base.

10.      Bennett also visited the Base Housing Office in person during January 2010.  Bennett was dressed in a military uniform during this meeting and claimed that he had just gotten off a plane with Admiral Olsen at CENTCOM.  Bennett claimed he

was working as Admiral Olsen's aide and that Admiral Olsen had directed him to obtain government housing as quickly as possible. On the basis of these assertions, the housing office showed Bennett an apartment on base. The employee also asked Bennett for a copy of his military orders on this date. Bennett stated that he did not have them because he just got off a plane but that he would provide them soon.

11.     On January 19, 2010, Bennett completed a housing application as well as the form required for government approval of his application. On his application, Bennett stated that he was reporting to duty at MacDill Air Force Base from a "dependent restricted/remote tour." He also stated that he was in the Army and that he was currently on active duty. He wrote that his "incoming unit assignment" at MacDill Air Force Base was CENTCOM. He stated on the government approval form that he was transferred from "11th PSYOP Battalion," his assigned unit in the Army Reserves, to "CENTCOM." On the basis of these assertions, Bennett's application was approved by the government employee who oversees and approves each application submitted for on-base living quarters.

12.     Bennett signed a lease and moved into on-base housing on or about January 29, 2010. On or about February 3, 2010, an employee of the Base Housing Office emailed Bennett asking for a copy of his orders. Bennett responded, "My orders are TS/SCI [top secret] with CENTCOM so I need approval first for what I can leave on file and disclose. I will try and get them to you ASAP." Neither Bennett nor housing office employees followed up on this communication. On this email and others during his email correspondence with the housing office, Bennett used his @us.army.mil email address.

-5-

13.     Based upon the above facts and information, your affiant believes that probable cause exists that SCOTT ALLAN BENNETT has violated Title 18, United States Code, Section 1001 – Making a False Statement on a Matter within the Jurisdiction of the Executive Branch of the Government of the United States; and Title 50, United States Code, Section 797 – Violating a Defense Property Security Regulation.

This completes my affidavit.

Edward R. Garcia, Jr., Detective
6th Security Forces Squadron, Dept.
of the U.S. Air Force Police

SWORN TO and SUBSCRIBED before me
this _1/6_ day of December, 2010 at
Tampa, Florida.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

-6-